IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **NEXT GENERATION WIRELESS, LTD.** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | Case No. 06-CV-838 |
| v. | : | JUDGE ALGENON L. MARBLEY |
| | : | Magistrate Judge Norah McCann King |
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **Defendant.** | : | |

## OPINION AND ORDER

### I. INTRODUCTION

Plaintiff Next Generation Wireless, Ltd. ("Next Generation") claims that the Internal Revenue Service ("IRS") improperly levied $15,736.68 from its bank accounts as payment for the tax liability of other business entities. Next Generation brought suit under the wrongful-levy statute, 26 U.S.C. § 7246(a)(1), for recovery of the levied funds. Defendant United States has moved for summary judgment on the grounds that this Court lacks subject matter jurisdiction over Next Generation's case because Next Generation failed to file suit within the nine-month limitations period governing wrongful-levy claims. For the reasons described below, the Court **GRANTS** the Government's motion.

### II. BACKGROUND

On April 27, 2005, the IRS notified Next Generation that it was imposing a lien in the amount of $627,795.72 on Next Generation's property for the unpaid tax liability of Next Generation Wireless, Inc. ("NG II") and Allied Communications, Inc. ("Allied"). The IRS claimed that Next Generation was the transferee, alter ego, and/or nominee of NG II and Allied.

Because the imposition of a federal tax lien is not sufficient for the Government to collect an unpaid tax liability, on December 15, 2005, the IRS served Key Bank and Next Generation with a notice of levy upon Next Generation's bank accounts. *See EC Term of Years Trust v. United States*, __ U.S. __; 127 S. Ct. 1763, 1765 (2007) (stating that "[a] federal tax lien . . . is not self-executing, and the IRS must take affirmative action to enforce collection of the unpaid taxes") (internal quotation marks and citation omitted). On January 6, 2006, the contents of Next Generation's Key Bank accounts, totaling $15,736.68, were transferred to the IRS pursuant to the notice of levy.

On January 12, 2006, Next Generation sent a Form 911, entitled "Application for Taxpayer Assistance Order" ("Form 911"), to the Taxpayer Advocate Service, a division within the IRS. The Form 911 explained that Next Generation was in danger of going out of business if the levied funds were not restored to its bank accounts. The Form was faxed to the attention of Trish Dinser. At her deposition, Dinser testified that she forwarded the Form to John Rice, an IRS revenue officer, who investigated the circumstances giving rise to the levy. In his report back to Dinser, Rice concluded that there was no basis for releasing the levy "because the taxpayer continues to deny responsibility for the liability and has made no effort to negotiate a settlement, despite having several opportunities to do so prior to the issuance of the levies." Rice confirmed that he had consulted with his superiors and that they agreed with this conclusion. As a result, the Taxpayer Advocate Service sent Next Generation a rejection letter on January 18, 2006, stating that the levy was valid and the funds would not be returned.

On October 4, 2006, nine months and twenty-one days after the IRS served the notice of levy, Next Generation filed this action, seeking to recover the levied funds under the wrongful-

levy statute, 26 U.S.C. § 7246(a)(1). The United States moved to dismiss the complaint on November 30, 2006, for lack of subject matter jurisdiction on the grounds that Next Generation had failed to file suit within the applicable nine-month limitations period. On December 1, 2006, Next Generation filed an amended complaint alleging that because it had made a written request of the IRS to return the levied funds, the nine-month limitations period had been extended pursuant to 26 U.S.C. § 6532(c)(2). On June 14, 2007, this Court denied the United States' motion to dismiss, finding that because Next Generation's written request to the IRS was not attached to its complaint, the Court had no way of ascertaining whether the request contained all the information necessary to extend the limitations period. *See Next Gen. Wireless, Ltd. v. United States*, No. 06-CV-838, 2007 WL 1731212 (S.D. Ohio June 14, 2007). The United States now moves for summary judgment.

### III. STANDARD OF REVIEW

Summary judgment is appropriate where the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant has the burden of proving the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In determining whether the movant has carried its burden, the Court views the evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

## IV. ANALYSIS

The United States Government cannot be sued unless Congress waives its sovereign immunity. *Block v. North Dakota*, 461 U.S. 273, 287 (1983). "A necessary corollary of this rule is that when Congress attaches conditions to legislation waiving the sovereign immunity of the United States, those conditions must be strictly observed, and exceptions thereto are not to be lightly implied." *Id.* A statute-of-limitations provision is one such condition that must be strictly applied. *Id.*; *see also United States v. Ranger Elec. Communs.*, 210 F.3d 627, 631 (6th Cir. 2000) ("Courts have consistently held that a statutory time limit is an integral condition of the sovereign's consent."). Therefore, if a plaintiff exceeds the statute of limitations, a court is deprived of subject matter jurisdiction to entertain the matter. *Ranger*, 210 F.3d at 631.

Congress has provided for a waiver of sovereign immunity in cases where a third party asserts that the Government has wrongfully levied his/her property in order to satisfy someone else's tax liability. *See* 26 U.S.C. § 7426(a)(1) (stating that "[i]f a levy has been made on property . . . any person (other than the person against whom is assessed the tax out of which such levy arose) who claims an interest in . . . such property and that such property was wrongfully levied upon may bring a civil action against the United States in a district court"). The Government's waiver of sovereign immunity is conditioned upon a nine-month statute of limitations, measured from the date the notice of levy was served. *See* 26 U.S.C. § 6532(c)(1); *see also State Bank of Fraser v. United States*, 861 F.2d 954, 967 (6th Cir. 1988). Because compliance with the statute of limitations is a term of the Government's consent to be sued, non-compliance with the nine-month limitations period deprives a district court of subject matter jurisdiction over the claim. *See, e.g., Amwest Surety Ins. Co. v. United States*, 28 F.3d 690, 694

(7th Cir. 1994). However, if the claimant submits a request for the return of the levied property, the limitations period will be extended by twelve months from the date of filing such request, or six months from the date of the Government's response denying the request, whichever is shorter. *See* 26 U.S.C. § 6532(c)(2).

To qualify for the statute-of-limitations extension, the claimant must satisfy the requirements for a "request," as set forth in 26 C.F.R. § 301.6343-2. First, the request must be in writing and "must be addressed to the district director (marked for the attention of the Chief, Special Procedures Staff) for the Internal Revenue district in which the levy was made."[1] *Id.* at § 301.6343-2(b). Second, the request must contain the following specific information: (1) the name and address of the person submitting the request; (2) a detailed description of the levied property; (3) a description of the claimant's interest in the levied property; and (4) the name and address of the taxpayer, the originating Internal Revenue district, and the date of the levy. *Id.*

A written request for the return of wrongfully levied property that does not contain all the foregoing information will not be deemed adequate. *See* 26 C.F.R. § 301.6343-2(c). A deficient request will be treated as adequate, however, if the Government fails to inform the claimant of the inadequacies within thirty days of receiving the request. *Id.*

---

[1] The wrongful-levy regulations were amended in 2007. Rather than requiring a claimant's written request to be addressed to "the district director (marked for the attention of the Chief, Special Procedures Staff)," the amended regulation, § 301.6343-2T, now provides that the written request "must be given to the IRS official, office and address specified in IRS Publication 4528, 'Making an Administrative Wrongful Levy Claim Under Internal Revenue Code (IRC) Section 6343(b)' . . . ." 26 C.F.R. § 301.6343-2T(b). The amended regulation goes on to state that "a request for the return of property wrongfully levied upon is not effective if it is given to an office other than the office listed in the relevant publication." *Id.* Because the amended regulation was not promulgated until after the events giving rise to this suit occurred, the Court will continue to apply the prior version, which required the claimant to address the request to the district director.

There is no dispute that Next Generation did not file its complaint within nine months of service of the notice of levy (the record suggests that the statute expired twenty-one days before Next Generation filed suit). The question is whether Next Generation's submission of its Form 911 constituted a written request for the return of its levied funds sufficient to extend the limitations period as authorized by § 6532(c)(2). The Government argues that a Form 911 can never constitute a proper written request under § 6532(c)(2) for the return of wrongfully levied property. A Form 911, reasons the Government, is a mechanism for providing relief to persons at risk of suffering "significant hardship as a result of the manner in which the internal revenue laws are being administered," 26 U.S.C. § 7811(a)(1)(A), whereas the wrongful-levy statute sets up an administrative mechanism for reviewing the merits of the challenged levy. Given these contrasting purposes, the Government contends that a wrongful-levy claimant cannot fulfill the procedural requirements of that statute by resorting to a Form 911. But putting aside this issue, and assuming that a Form 911 could serve as a proper "written request" for purposes of extending the statute of limitations, the real question is whether Next Generation complied with all the procedural requirements of 26 C.F.R. § 301.6343-2. As described below, it did not.

Next Generation concedes that it did not address its Form 911 to "the district director (marked for the attention of the Chief, Special Procedures Staff) for the Internal Revenue district in which the levy was made," as expressly required by the wrongful-levy regulations.[2] 26 C.F.R. § 301.6343-2. Instead, Next Generation sent its "request," if it may be called that, to an

---

[2] Next Generation does not argue that the IRS' regulations are not part of the conditions Congress attached to its waiver of sovereign immunity. The *Amwest* Court considered the issue and concluded that "the requirement that requests for the return of property be mailed specifically to the district director [is binding on the courts], and therefore constitutes an additional condition to the government's consent to be sued under § 7426(a)(1)." 28 F.3d at 696.

6

altogether different division of the IRS, namely, the Taxpayer Advocate Service, and specifically, its Cincinnati, Ohio office.  Next Generation argues that its request must be treated as adequate despite this "technical[] insufficien[cy]" because the district director never notified it of the deficiency, i.e., Next Generation's failure to address its request to the proper IRS recipient.  Citing the wrongful-levy regulations, Next Generation points out that when the district director fails to notify the claimant within thirty days of any inadequacies plaguing a request, the request must be treated as adequate.  26 C.F.R. §301.6343-2(c).

There is an obvious logical flaw to Next Generation's argument: how could the district director inform Next Generation that its request was improperly addressed when the district director never received the request in the first place, precisely because it was improperly addressed?  *See, e.g., Amwest*, 28 F.3d at 697 ("It only makes sense . . . that before the district director can notify the claimant of any inadequacies, it is first necessary that the district director actually received the request.").  Next Generation gets around this problem by charging the district director with knowledge of its request to have the levied funds restored to its bank accounts based on the fact that the Taxpayer Advocate Service and the revenue officer in charge of Next Generation's case knew about its request.  In other words, because certain IRS officials knew that Next Generation was seeking the return of its levied funds, Next Generation claims that all other relevant IRS officials are presumed to have known as well.

There is certainly a fairness appeal to Next Generation's argument.  It ought not be asking too much for the left hand to know what the right hand is doing, especially when otherwise the burden is placed on the public to independently open multiple channels of identical communication with the same federal agency.  But things are not so straightforward here because

courts have strictly observed, to say the least, the requirements of the wrongful-levy regulations, including the requirement that the written request seeking the return of levied property be addressed to "the district director (marked for the attention of the Chief, Special Procedures Staff) for the Internal Revenue district in which the levy was made." 26 C.F.R. § 301.6343-2(b).

In *Amwest*, for example, the wrongful-levy claimant mailed its request to the IRS revenue officer in charge of its case, rather than the district director. 28 F.3d at 692. While acknowledging that this "seemed the most logical thing to do," *id.*, given that the notice of levy advised the claimant to contact the revenue officer with any questions, the Seventh Circuit nonetheless held that wrongful-levy claimants must comply with the requirements of 26 C.F.R. § 301.6343-2(b) to the letter, that Amwest's improperly addressed request did not meet this standard, and that therefore the statute of limitations had not been extended and the claim had to be dismissed as time barred. *Id.* at 696.

In *LaBonte v. United States*, 233 F.3d 1049 (7th Cir. 2000), the Seventh Circuit again dismissed a wrongful-levy claim for failure strictly to observe the procedural requirements for making a written request. The claimant there did virtually everything right: he addressed his request to the correct IRS division (the Special Procedures Staff), sent it to the same address and fax number as the district director, and specifically requested in the body of the letter that the "district director" release the levy on his property. *Id.* at 1052-53. All the claimant neglected to do was specifically address his letter to "the district director, marked to the attention of the Chief of the Special Procedures Staff." *Id.* at 1053. The Seventh Circuit concluded that this omission alone was enough to require dismissal of his claim. Similarly, in *BSC Term of Years Trust v. United States*, No. 00-CA-270, 2000 U.S. Dist. LEXIS 20058, *10 (W.D. Tex. Dec. 28, 2000),

the court dismissed a claim where the request for the return of the levied property was properly addressed to the district director, but was mailed to the wrong address in Austin, Texas.  *See also Peoples Banking Co. v. United States*, No. C2-93-785, 1994 U.S. Dist. LEXIS 7151, *13 (S.D. Ohio May 18, 1994) (holding that the filing of a cross-claim against the United States in an underlying state-court action did not constitute a written request for the return of levied property under 26 C.F.R. § 301.6343-1(b) and therefore the limitations period had not been extended).

      The foregoing precedent, although not binding on this Court, plainly support dismissing Next Generation's claim as untimely.  Next Generation has not pointed to any authorities holding to the contrary.  Moreover, this Court recognizes the good reasons supporting the requirement that a request for the return of levied property be addressed to the proper recipient.  As the *Amwest* Court noted, it is the district director who is vested with administrative authority to resolve wrongful-levy claims and so directing requests to any other IRS official is pointless. *See Amwest*, 28 F.3d at 696.  And, "given the size of the IRS, it is possible that a request mailed to someone besides the district director will languish on some subordinate's desk . . . and never find its way to the district director."  *Id.*

      The Court is persuaded by the reasoning in *Amwest*, *LaBonte*, and the other cases cited above.  But, like those other courts, this Court is not indifferent to the apparent "harshness" of the result.  *Amwest*, 28 F.3d at 697; *LaBonte*, 233 F.3d at 1053.  The Seventh Circuit has twice expressed concern that the IRS' communications with wrongful-levy claimants were not all they could, and perhaps should, have been.  *See Amwest*, 28 F.3d at 697; *LaBonte*, 233 F.3d at 1053.  In both *Amwest* and *LaBonte*, the Seventh Circuit's criticism stemmed mainly from the fact that IRS officials conducted settlement negotiations with the claimants for extended periods of time

without ever mentioning that the claimants' written requests were deficient. There is no evidence showing that the IRS engaged in similarly confusing (if not misleading) behavior here.

Nonetheless, the general concern articulated in *Amwest* and *LaBonte* about the adequacy of the IRS' "procedures" in dealing with wrongful-levy claimants is still very much at play. *Amwest*, 28 F.3d at 698. The IRS knew, even if the precise district director did not, that Next Generation was seeking relief from the levy imposed on its bank accounts. There is no evidence, though, suggesting that the IRS did anything to educate Next Generation about its rights and responsibilities under the wrongful-levy statute, nor did the IRS forward Next Generation's dispute to the district director.³ Of course, there does not appear to be anything that compelled the IRS to take these steps, and therefore the Court's opinion should not be read as rebuking the agency for failing to live up to its established duties.

The Court's purpose, rather, is to make plain that where the IRS has crafted specific regulations governing wrongful-levy claims, where the IRS has taken the position that courts must strictly enforce those regulations, and where the law of sovereign immunity demands that courts do so, the wisdom of the IRS' judgment—its minimalist approach of declining to provide claimants with any meaningful information about preserving their claims—is open to considerable debate. The inevitable consequence of what might be regarded as the IRS' lack of initiative is that wrongful-levy claimants are forced to independently "navigate their way through a 'regulatory maze.'" *BSC*, 2000 U.S. Dist. LEXIS 20058 at *12. Penalizing claimants when

---

³The Government does not defend, nor could it, by arguing that Next Generation's submission of its Form 911 was insufficient to apprise the IRS that Next Generation was challenging the imposition of the levy. The Form 911 specifically sought return of the levied funds and stated that "[t]his levy is for taxes owed by Allied Communications."

they go astray in a way that the IRS easily could have prevented is indeed a "disappointment," in the words of the *BSC* court.  *Id.*; *see also LaBonte*, 233 F.3d at 1053 (commenting that "we are especially hard-pressed to explain the IRS' behavior in light of its recent efforts to improve its image in the eyes of a skeptical public").  The burden imposed on wrongful-levy claimants is especially ironic here because Next Generation sought help from, of all places, the IRS' *Taxpayer Advocate Service*.  The mission of the Taxpayer Advocate Service is, among other things, to "assist taxpayers in resolving problems with the Internal Revenue Service."  26 U.S.C. § 7803(c)(2)(A).  One may well wonder about the usefulness of a Taxpayer Advocate Service if it does not at least help taxpayers acquire the information necessary to preserve their claims.

It is not for this Court to tell the IRS how to do its job, but this case reinforces Judge Cudahy's belief, articulated in his *Amwest* concurrence, that "the Internal Revenue Service ought to be able to do a great deal better than its performance here indicates."  *Id.* at 698.

## V.  CONCLUSION

For the foregoing reasons, the United States' motion for summary judgment is **GRANTED** and this case is dismissed.

**IT IS SO ORDERED.**

        s/Algenon L. Marbley
        **ALGENON L. MARBLEY**
        **United States District Court Judge**

**DATE: August 28, 2008**